IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| HAMILTON PALMER,            )<br>    Plaintiff,            )<br>                            )<br>        v.                  )<br>                            )<br> JEFF SMALL,                )<br>    Defendant.              )<br>                            ) | Civil Action No. 3:24CV864 (RCY) |

## MEMORANDUM OPINION

This is a § 1983 suit for damages and injunctive relief in which *pro se* Plaintiff Hamilton Palmer alleges Defendant Jeff Small violated his Equal Protection and First Amendment rights by denying him access to court records online. Plaintiff brings this action against Defendant Small in both his official capacity as the Fredericksburg Circuit Court Clerk and in his individual capacity. This matter is presently before the Court on Defendant Small's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Motion to Dismiss," ECF No. 16). The Motion to Dismiss has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court will grant Defendant's Motion and dismiss the case with prejudice.

## I. FACTUAL ALLEGATIONS[1]

On July 10, 2023, Plaintiff Hamilton Palmer, a resident of Fredericksburg, Virginia, appealed an action decided by the Fredericksburg City Council to the Fredericksburg Circuit Court. Am. Compl. ¶¶ 1, 7, ECF No. 14. As part of his appeal, and because he was proceeding *pro se*, Plaintiff requested access to the Virginia Officer of the Court Remote Access ("OCRA") system. *Id*. ¶ 8; *see also* Compl. Ex. C, ECF No. 14-1. OCRA is an online database, created by the Executive Secretary of the Supreme Court of Virginia ("ES"), that compiles nonconfidential civil court records for remote access. *See* Am. Compl. ¶ 14, 16; *see also* Va. Code Ann. § 17.1-293(E)(7).[2] The ES "holds and maintains the [civil court records]." Am. Compl. ¶ 14. Access to OCRA is restricted by statute and granted at the discretion of the court clerk to "members in good standing with the Virginia State Bar and their authorized agents, pro hac vice attorneys authorized by the court for purposes of the practice of law, and such governmental agencies" ("Access Restriction"). Am. Compl. ¶ 16 (citing Va. Code § 17.1-293(E)(7)).

Defendant Small serves as the Clerk of Court for Fredericksburg Circuit Court and is a duly elected constitutional officer of Virginia. Am. Compl. ¶ 2. Despite Plaintiff's continual requests, Defendant Small denied Plaintiff access to OCRA "citing current Virginia law," i.e. the Access Restriction. *Id*. ¶¶ 8, 11; *see also* Compl. Ex. C. On August 22, 2023, Plaintiff formally

---

[1] When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id*. Additionally, a court may consider any documents attached to the complaint. E.*I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Applying these standards, the Court construes the facts in the Complaint, including any attached documents, as follows.

[2] Generally, the Court does not contemplate extrinsic material when evaluating a complaint on a motion to dismiss. However, the Court may consider matters of public record subject to judicial notice. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, the Court takes judicial notice of the applicable Virginia Code section which creates this remote access. *See* Va. Code Ann. § 17.1-293(E)(7); *see also Courthouse News Serv. v. Smith*, 126 F.4th 899, 905 (4th Cir. 2025) (describing the same).

moved Fredericksburg Circuit Court to grant him OCRA access as a *pro se* litigant, which the Circuit Court denied, apparently "citing no reason in [its] Order". Am. Compl. ¶¶ 9–10.

Virginia law gives circuit court clerks discretion to provide the public access to court records via the Internet, subject to certain conditions.[3] *See* Am. Compl. ¶ 30; Va. Code Ann. § 17.1-225. All Virginia circuit courts provide the public with access to court records in-person. *See* Am. Compl. ¶¶ 22, 41. The court documents available to the public at the courthouse are the same court documents made available through OCRA. Am. Compl. ¶ 22.

On October 29, 2024, Plaintiff emailed Defendant Small and requested copies of the civil court records made available online via ORCA. *Id.* ¶ 12. In response to Plaintiff's request, Defendant Small informed Plaintiff that copies "were available in either hardcopy [or] digital format for $0.50 per image." *Id.* ¶ 13. Upon further review and input from the ES, Defendant Small informed Plaintiff that his request for the civil court records available on OCRA amounted to 5.4 million images and would cost Plaintiff approximately 2.7 million dollars. *Id.* ¶¶ 14–15.

## II. RELEVANT PROCEDURAL POSTURE

Plaintiff filed his Complaint on December 3, 2024. *See* Compl., ECF No. 1. Therein, Plaintiff named Defendants Hon. Sara Deneke, Circuit Court Judge for the Fredericksburg Circuit Court; and Jeff Small, Clerk of Court for Fredericksburg Circuit Court. *Id.* After both defendants filed Motions to Dismiss, ECF Nos. 6, 10, Plaintiff filed the operative Amended Complaint, Am. Compl. ECF No. 14, on January 28, 2025, rendering both Motions to Dismiss moot. *See* Order,

---

[3] "[N]o court clerk shall post on the Internet any document that contains the following information: (i) an actual signature, (ii) a social security number, (iii) a date of birth identified with a particular person, (iv) the maiden name of a person's parent so as to be identified with a particular person, (v) any financial account number or numbers, or (vi) the name and age of any minor child." Va. Code Ann. § 17.1-293(B). These restrictions do not exist for OCRA system users. *Smith*, 126 F.4th at 905.

3

ECF No. 15. Plaintiff's Amended Complaint only named Defendant Small, thereby removing Defendant Deneke from the lawsuit. *See* Am. Compl., ECF No. 14.

On February 11, 2025, Defendant Small filed the instant Motion to Dismiss, Mot. Dismiss, ECF No. 16, and accompanying Memorandum in Support thereof, Mem. Supp., ECF No. 17. Defendant Small also filed a proper Roseboro Notice pursuant to Rule 7(K) of the Local Civil Rules of the United States District Court for the Eastern District of Virginia. ECF No. 18. On March 5, 2025, Plaintiff filed his Opposition to Defendant Small's Motion to Dismiss, Resp. Opp'n, ECF No. 19, and on March 11, 2025, Defendant filed his Reply, ECF No. 20. Accordingly, the matter is now ripe for review.

### III. STANDARD OF REVIEW

#### A. Rule 12(b)(1) Standard

A motion to dismiss under Rule 12(b)(1) tests a court's subject matter jurisdiction over a claim. Motions under Rule 12(b)(1) attack jurisdiction in one of two ways: facially or factually. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). On a facial attack, the movant argues that the complaint fails on its face to allege facts on which subject matter jurisdiction can be based. *Id.* In such a case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). So, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* A factual attack on jurisdiction, on the other hand, challenges the factual allegations underlying the assertion of jurisdiction. *Id.* In either circumstance, "the burden of proof on a Rule 12(b)(1) motion is on the party asserting that subject matter jurisdiction exists," typically the plaintiff. 5B Charles A. Wright, Arthur R. Miller, & A. Benjamin Spencer, *Federal Practice & Procedure* § 1350 (4th ed.

4

2024); *see Moore v. Gregory*, 2024 WL 1774819, at *4 (E.D. Va. Apr. 24, 2024) (citing *Piney Run Pres. Ass'n v. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008)).  A court may grant a Rule 12(b)(1) motion and grant the plaintiff leave to amend, but a Rule 12(b)(1) dismissal without leave to amend is proper when the pleader "cannot truthfully amend" to cure the jurisdictional defect.  Wright, Miller, & Spencer, *supra*, § 1350.

### B. Rule 12(b)(6) Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  A Rule 12(b)(6) motion "is not a procedure for resolving . . . contest[s] between the parties about the facts or the substantive merits of the plaintiff's case."  Wright, Miller, & Spencer, *supra*, § 1356.  Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2).  *Id.* (citations omitted).  The plaintiff's well-pleaded factual allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff.  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  All reasonable inferences that can be drawn from the complaint are drawn in the plaintiff's favor.  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).

However, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient.  *Id.*  Ultimately, though, "on a Rule 12(b)(6) motion, the burden lies with the movant to show entitlement to dismissal." *Ziegler v. Dunn*, 2024 WL 761860, at *2 (E.D. Va. Feb. 23, 2024) (citing Wright, Miller, & Spencer, *supra*, § 1357).

Further, a *pro se* complaint is "to be liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).  "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategy for a party," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  So, a *pro se* complaint "must nevertheless set forth enough facts to state a claim."  *Erwin v. FedEx Freight, Inc.*, 2023 WL 5959422, at *2 (E.D. Va. Sept. 13, 2023).

If a Rule 12(b)(6) motion is granted, the dismissal generally is not with prejudice, because a district court is normally to "give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected."  Wright, Miller, & Spencer, *supra*,

6

§ 1357. However, a Rule 12(b)(6) dismissal without leave to amend is appropriate where it appears a plaintiff cannot cure the defect, such that permitting amendment would be futile. *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

## IV. DISCUSSION

Plaintiff brings two claims against Defendant Small in both his official and individual capacities. Specifically, Plaintiff brings two § 1983 claims alleging Defendant (1) violated his right to Equal Protection under the law (Count I), and (2) infringed upon his First Amendment right to access court records (Count II) through Defendant Small's denial of Plaintiff's request to access OCRA. *See generally* Am. Compl. Defendant moves this Court to dismiss both counts on multiple grounds.[4] Most notably, Defendant seeks dismissal based on *Courthouse News Service v. Smith*, 126 F.4th 899 (4th Cir. 2025), a recent Fourth Circuit decision that addresses the precise constitutional injuries that Plaintiff alleges. Mem. Supp. 7–9.

Plaintiff disagrees and distinguishes his case from the Fourth Circuit's ruling in *Smith*. *See generally* Resp. Opp'n. Construing Plaintiff's filings liberally, his argument rests on his status as a "*pro se* litigant," which he contends differentiates himself from the plaintiff in *Smith*, a press organization. *Id*. at 4. Plaintiff proffers that his status as a "*pro se* litigant," entitles him to OCRA access "for the same reasons as attorneys"—to "effectively frame and argue his case." *Id*.

Under Title 42 U.S.C. § 1983, a plaintiff may assert a claim against "[e]very person who, under color of any [law], subjects, or causes to be subjected, any citizen of the United States or

---

[4] Defendant raises, *inter alia*, Eleventh Amendment immunity and quasi-judicial immunity; however, the Court first engages with Defendant's sufficiency claim based on recent, binding Fourth Circuit precedent. *See Jenkins v. Medford*, 119 F.3d 1156, 1160 (4th Cir. 1997) (citing *ACLU of Md., Inc. v. Wicomico Cnty*, 999 F.2d 780, 784 (4th Cir. 1993)) (explaining a review of §1983 claims under a 12(b)(6) framework for lack of any deprivation of a constitutional right "weeds out insubstantial [] claims" before assessing other defenses); *see also Doe v. Metro. Police Dep't*, 445 F.3d 460, 467 (D.C. Cir. 2006) (determining that when a Plaintiff fails to state a § 1983 claim it is subject to dismissal under Rule 12(b)(6), not Rule 12(b)(1)).

7

other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . ..." 42 U.S.C. § 1983. § 1983 creates a cause of action to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-257 (1978)). All causes of action under § 1983, require a plaintiff to allege "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Campbell v. Florian*, 972 F.3d 385, 392 n.5 (4th Cir. 2020) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988).

"A state official can be in a § 1983 suit in three ways: in his personal[/individual] capacity, his official capacity, or in a more limited way, his supervisory capacity." *King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016). Suits against state officials in their official capacities "are treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). By contrast, suits against state officials in their individual capacities "seek to impose individual liability . . . for actions taken under color of state law." *Id*.

The Court will begin by assessing both Counts against Defendant Small in his official capacity, before assessing the claims brought against Defendant Small in his individual capacity. For the reasons set forth below, the Court finds that Plaintiff's alleged constitutional harms are foreclosed by binding Fourth Circuit precedent.

### A. Plaintiff's § 1983 Claims Against Defendant Small in His Official Capacity (Counts I and II)

The Court first considers the sufficiency of Plaintiff's claims against Defendant Small in his official capacity.[5] As noted *supra*, all § 1983 claims require a plaintiff to allege "(1) the

---

[5] Plaintiff captions his Amended Complaint as a suit against Defendant Small in his official capacity, by virtue of his role as the Clerk of Court. *See generally* Am. Compl.

8

deprivation of a right secured by the Constitution or a federal statute, (2) by a person, (3) acting under color of state law." *Jenkins*, 119 F.3d at 1159–60.  However, claims brought against a state actor in their official capacity require more than individual capacity claims. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Such claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id*. at 165–166 (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)).  As the government entity is the real party, the entity's "policy or custom must have played a part in the violation of federal law," so much so to be the "moving force behind the deprivation." *Id*. at 166 (citing *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)) (internal quotation marks omitted); *see also Atkinson v. Godfrey*, 100 F.4th 498, 509 (4th Cir. 2024).

Here, Defendant argues, *inter alia*,[6] that Plaintiff fails to state a claim based on the Fourth Circuit's holding in *Courthouse News Services v. Smith*.  *See* Mem. Supp. 3, 7–8.  In response, Plaintiff argues that *Smith* is not dispositive of the precise issue in his case—whether *pro se* litigants are entitled to remote access—viewing *Smith* as "a split decision" and "not yet settled." Resp. Opp'n 4.  The Court begins by addressing this threshold inquiry of whether Plaintiff's claims are foreclosed by *Smith*, which the Court agrees is dispositive.

In *Smith*, the Fourth Circuit scrutinized the same Virginia law at issue in the present case, the Access Restriction statute, which allows circuit court clerks to restrict remote access to court documents via OCRA.  *Smith*, 126 F.4th at 906.  The Access Restriction statute reads:

> Providing secure remote access to nonconfidential court records, subject to any fees charged by the clerk, to members in good standing with the Virginia State Bar and their authorized agents, pro hac vice attorneys authorized by the court for purposes of the practice of law, and such governmental agencies as authorized by the clerk.

---

[6] Defendant Small also asserts an Eleventh Amendment Immunity defense to Plaintiff's claims against him in his official capacity. *See* Mem. Supp. 9–18.

9

Va. Code Ann. § 17.1-293(E)(7). The Access Restriction statute effectively creates an avenue for expressly enumerated groups, i.e. Virginia attorneys, to access court documents remotely at the discretion of the court clerk.

In *Smith*, Courthouse News Service ("Courthouse News"), a press organization, filed suit against a circuit court clerk in her official capacity for enforcing OCRA's Access Restriction and prohibiting Courthouse News from accessing the court records remotely. *Smith*, 126 F.4th at 906. Courthouse News made three arguments, only two of which are relevant to the instant matter. *Id*. First, Courthouse News alleged the Access Restriction statute infringed upon the organization's First Amendment right to access court records. *Id*. Secondly, Courthouse News alleged a deprivation of its right Equal Protection under the law, arguing that Va. Code Ann. § 17.1-293 impermissibly distinguished between "attorneys and non-attorneys." *Id*. The Fourth Circuit, affirming in relevant part the lower court's ruling, was unpersuaded, holding that no constitutional violation occurred.

Defendant Small proffers that, on its face, *Smith* clearly forecloses Plaintiff's alleged constitutional injuries. Mem. Supp. 7–8. The Court agrees. Following the Fourth Circuit's ordered analysis set out in *Smith*, the Court first addresses Plaintiff's First Amendment claim (Count II), followed by his Equal Protection claim (Count I).

<u>1. Count II—Plaintiff's First Amendment Claim is Foreclosed by Smith</u>

The Court must first determine whether Plaintiff's First Amendment claim is precluded by binding precedent. As described below, the Court finds that Plaintiff's injury is indeed foreclosed.

A fundamental foundation of American jurisprudence forbids Congress from "abridging the freedom of speech, or of the press." U.S. Const. amend. I. Although not explicitly mentioned in the First Amendment, the Supreme Court of the United States has recognized qualified rights

10

of access to the nation's judicial system stemming from this promised freedom of speech. *See, e.g.*, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (finding an implicit right of the press and public to attend criminal trials in the First Amendment). On numerous occasions, the Fourth Circuit has extended this First Amendment-protected right to civil court records. *See, e.g.*, *Courthouse News Serv. v. Schaefer*, 2 F4th 318, 328 (4th Cir. 2021) ("Accordingly, the press and public enjoy a First Amendment right of access to newly filed civil complaints."); *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) ("We believe that the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case"). In fact, such right to access is "contemporaneous" access. *Schaefer*, 2 F.4th at 328 (explaining that "'contemporaneous' in this context requires that the court act 'as expeditiously as possible'" (quoting *Doe v. Pub. Citizen*, 749 F.3d 246, 273 (4th Cir. 2014)).

However, this right is not absolute. *See id.*; *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 606–607 (1982) (noting that the limitations on the public or press's access to criminal trials are limited and any limitation must survive strict scrutiny). Typically, an infringement on the First Amendment right to access must survive strict scrutiny to be deemed constitutional. *Globe Newspaper Co.*, 457 U.S. at 606–607. However, there is an exception for "time, place, manner" regulations, which the Supreme Court and Fourth Circuit both deem constitutional if the regulation passes muster under a "more relaxed scrutiny." *Smith*, 126 F.4th at 908 (first citing *id*. at 607 n.17; and then citing *Schaefer*, 2 F.4th at 328). Under this standard, the challenged practice must be "content-neutral, narrowly tailored and necessary to preserve the court's important interest[s]." *Schaefer*, 2 F.4th at 328 (internal quotation marks omitted); *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 63 (1976) ("Reasonable regulations of the time, place,

and manner of protected speech, where those regulations are necessary to further significant governmental interests, are permitted by the First Amendment.")

In *Smith*, the Fourth Circuit evaluated the Access Restriction to OCRA under this more relaxed scrutiny standard. *Id*. The Fourth Circuit deemed that the Access Restriction statute was not a denial of access, but instead a permissible limitation on access, since Courthouse News maintained access to those same documents at the physical courthouse terminals during the courthouse's operational hours. *Id*. Thus, the Fourth Circuit determined that the Access Restriction statute is a "time, place, manner" regulation on the First Amendment's right to access. *Id*. Based on its finding that the Access Restriction statute qualified as a "time, place, manner" restriction, the statute only needed to survive relaxed scrutiny when challenged, which the Fourth Circuit ultimately concluded that it did. *Id*. at 908–09, 917–18.[7] Accordingly, under binding Fourth Circuit precedent, the enforcement of OCRA's Access Restriction—by limiting online access to Virginia attorneys and other enumerated groups—does not amount to a recognized constitutional injury under the First Amendment. *Id*. at 918.

---

[7] First, the Fourth Circuit held that the Access Restriction statute was a "content-neutral" regulation as it "applies to all nonconfidential civil court records in the same fashion and does not treat civil court records about a certain subject or topic differently than others." *Smith*, 126 F.4th at 909 (quoting *Hade*, 631 F. Supp. 3d at 362).

Next, the Court assessed the government's interest, which the Commonwealth painted as two-fold: the Access Restriction statue (1) serves to "protect[] sensitive personal information contained in court records;" and (2) "further[s] the orderly and efficient administration of justice." *Id*. at 911. As these government interests were largely undisputed, the Court viewed both as sufficiently important. *Id*. at 910–11.

Finally, the Court considered whether the Access Restriction statute was narrowly tailored to preserve these important interests. *Id*. at 911. The Fourth Circuit ultimately determined the Access Restriction statute was narrowly tailored because, absent a restriction, there was an increased threat of "data mining" and misuse of sensitive information. *Id*. at 912–13. The Court reasoned that the Access Restriction left open "ample alternative channels of communication," a necessity for restrictions on speech, by making identical, physical records available at the public courthouses. *Id*. at 916.

As such, the Fourth Circuit held that the challenged Access Restriction statute passed muster under a relaxed scrutiny standard and thus is constitutional. *Id*. at 916–17.

Like the plaintiff in *Smith*, Plaintiff here attacks the constitutionality of the same Access Restriction statute, arguing it improperly infringes on his First Amendment right to access court documents and "create[es] a deterrent and hindrance to Plaintiff's rights for equal access." *See* Am. Compl. ¶¶ 16, 38–43. Further, the OCRA system used by the Fredericksburg Circuit Court is the same OCRA system at issue in *Smith*. 126 F.4th at 905–06. Plaintiff attempts to paint himself as similarly situated to Virginia attorneys, an enumerated group permitted access to OCRA at the discretion of the court clerk, by classifying himself as "counsel and a pro se petitioner" rather than a member of the "general public." Am. Compl. ¶ 9. However, given the *Smith* court's finding that the refusal to grant access to OCRA is not a cognizable injury under the First Amendment, Plaintiff's argument is therefore clearly foreclosed. *Smith*, 126 F.4th at 916–17. Since Plaintiff still maintains access to the same public court filings in person at the courthouse and may purchase copies of these filings—the same access Courthouse News maintains in *Smith*—Plaintiff's alleged constitutional injury is barred by *Smith*.

Without a cognizable injury under the First Amendment, Plaintiff's Count II against Defendant Small in his official capacity fails. As established above, and as outlined in *Smith*, there is no underlying First Amendment violation, and thus, no deprivation of a right secured by the Constitution or a federal statute.

<u>2. Count I—Plaintiff's Equal Protection Claim is Also Foreclosed by *Smith*</u>

The Court now moves to Plaintiff's other claim, which alleges a violation of his Equal Protection under the law as a *pro se* litigant. Defendant Small asserts that *Smith* also extends to Plaintiff's Count I, foreclosing any relief. Mem. Supp. 19. Defendant also contends that, irrespective of *Smith*, Plaintiff fails to state an Equal Protection claim because he does not sufficiently allege a violation of a constitutional right or establish that he is a member of a

recognized suspect class. *Id.* at 20. As such, Defendant maintains that the Restriction Access statute should be subjected to a more lenient rational basis review. *Id*. 19–22. Plaintiff disagrees and contends that his status in his appeal "before the [Fredericksburg Circuit] court" similarly situates himself with Virginia-barred attorneys so as to require Equal Protection under the law. Resp. Opp'n. 8. As with Count II, the injury alleged in Count I is foreclosed by the Fourth Circuit's decision in *Smith*.

To bring a successful Equal Protection claim, a plaintiff must "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *King v. Rubenstein*, 825 F.3d 206, 220 (4th Cir. 2016) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). If a plaintiff can establish these aforementioned elements, the court then must apply the appropriate level of scrutiny. *Id*. Strict scrutiny is applied if "the statute employs a *suspect class* or burdens the exercise of a *constitutional right*"; otherwise, the Court employs a rational basis review.[8] *Mitchell v. Comm'r of the SSA*, 182 F.3d 272, 274 (4th Cir. 1999) (emphasis added). This rational basis review affords "a strong presumption of validity" to the restriction. *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 651 (4th Cir. 2020) (quoting *F.C.C. v. Beach Commc'ns*, 508 U.S. 307, 314–15 (1993)).

There is, however, a different standard that the Fourth Circuit articulated in *Smith* with respect to Equal Protection claims that relate to content-neutral time, place, and manner restrictions. *See Smith*, 126 F.4th at 918. Adopting the standard outlined by its sister circuits, *Smith* held that "[w]here the state shows a satisfactory rationale for a content-neutral time, place,

---

[8] A rational basis review presumes the statute to be valid "if the classification it draws is rationally related to a legitimate purpose." *Morrison*, 239 F.3d at 654.

and manner regulation, [then the] regulation necessarily survives scrutiny under the Equal Protection Clause." *Smith*, 126 F.4th at 918 (first quoting *Brown v. City of Pittsburgh*, 586 F.3d 262, 283 (3d Cir. 2009); and then quoting *McGuire v. Reilly*, 260 F.3d 36, 49–50 (1st Cir. 2001)) (cleaned up)). That is because "the equal protection interests involved in the differential treatment of speech are inextricably intertwined with First Amendment concerns . . . ." *Id.* (quoting *McGuire*, 260 F. 3d at 49); *see also id.* ("[I]f every time, place, and manner regulation were subject to strict scrutiny under the Equal Protection Clause simply because it burdened constitutionally protected speech, *Ward*'s intermediate-scrutiny test would be rendered obsolete." (quoting *Brown v. City of Pittsburgh*, 586 F.3d 263, 283 (3d Cir. 2009)).

As described *supra* Part IV.A.1.a., the Fourth Circuit determined in *Smith* that the OCRA Access Restriction statute is a content-neutral time, place, and manner regulation and thus survives under the First Amendment. Given this determination, the OCRA Access Restriction necessarily survives under the Equal Protection Clause, too. *Id*. Therefore, Plaintiff also fails to state a claim as to Count I against Defendant in his official capacity.

The Court declines to address Defendant Small's additional arguments,[9] as *Smith* facially and definitively addresses both Counts against Defendant Small in his official capacity.

## B. Plaintiff's § 1983 Claims Against Defendant Small in His Individual Capacity (Counts I and II)

The Court turns to Plaintiff's claims against Defendant in his individual capacity. § 1983 claims against a government official in their individual capacity are different from suits brought in their official capacity, in so far as the entity employing the official is not a party to the suit.

---

[9] There is no caselaw suggesting a litigant's *pro se* status is sufficient grounds to classify as a "suspect class." *See e.g. Christian v. United States*, 2017 U.S. Dist. LEXIS 188949 at *6 (E.D. Va. Aug. 15, 2017) (citing *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 419 (2d Cir. 1999)); *McDaniel v. Bailey*, 2018 U.S. Dist. LEXIS 115455 at *14–15 (W.D.N.C. July 11, 2018) (finding that an individual's *pro se* status does not qualify as a protected class § 1983 discriminatory conspiracy claim).

*Graham*, 473 U.S. at 167–68. An individual capacity § 1983 claim requires less than an official capacity § 1983 claim; "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Hafer*, 502 U.S. at 25 (quoting *Graham*, 473 U.S. at 166).

Defendant Small again argues that the Fourth Circuit's decision in *Smith* forecloses Plaintiff's claim against him in his individual capacity because *Smith* established that enforcement of OCRA Access Restriction does not give rise to either a First Amendment or an Equal Protection violation. Mem. Supp. 7–8, 18–19; Reply 1–3, 5.[10] As explained *supra* Part IV.A.1, the Court finds that Plaintiff's constitutional challenges are, in fact, decidedly foreclosed by *Smith*. Because Plaintiff has failed to allege a deprivation of a federal right in Counts I and II, the Court will dismiss each of these claims against Defendant Small in his individual capacity as well.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss for failing to state a claim, as Plaintiff's claims are foreclosed by *Courthouse News Service v. Smith*.

An appropriate Order will accompany this Memorandum Opinion.

/s/ RCY
Roderick C. Young
United States District Judge

Date: September 18, 2025
Richmond, Virginia

---

[10] Defendant Small also argues that he is entitled to Qualified Immunity for Plaintiff's claim against him in his individual capacity, as well as Absolute Quasi-Judicial Immunity. *See* Mem. Supp. 18–19. The Court need not address these arguments, as Plaintiff's claims are precluded by *Smith*.